[No. 41547-6-I.   Division One.   March 1, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ENOCH RAGIN, *Appellant*.

---

*Michael L. Mittlestat* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Foerschler, Deputy,* for respondent.

PER CURIAM — We affirm James Ragin's conviction for felony harassment of William Dahl, concluding that the trial court properly admitted evidence of prior bad acts Ragin told Dahl about because they were admitted to prove the reasonableness of Dahl's fear when Ragin threatened him, an essential element of the crime.

## FACTS

William Dahl and James Ragin met through a men's recovery program at City Church in 1995. Dahl described Ragin as an "acquaintance" he saw several times a month at City Church and Bible study group meetings and at infrequent social gatherings. Because Ragin had no transportation, Dahl often drove him from the meetings to his residence in downtown Seattle.[1] During this time, Ragin told Dahl that he had been convicted of armed robbery, had been involved in a "domestic violence situation" with his wife, was "well known" by the Bellevue Police Department, and suffered from episodic rages. But before September of 1996, Dahl testified that Ragin was consistently soft-spoken, polite, and meticulous about his affairs.

On the morning of September 6, Ragin called Dahl at his home, "screaming and yelling and cursing and swearing" about, among other things, people at the computer lab at the University of Washington, and the City Church's refusal to give him money. Dahl was worried that Ragin might harm himself or others, so he told Ragin to wait where he was until Dahl could pick him up near the University. When Dahl arrived, Ragin was still in a "state of rage," and continued his incessant screaming and yelling until they arrived at Dahl's house in Bellevue. Ragin

---

[1]Dahl testified that he and his wife regularly provide medical assistance, clothing, and transportation to disadvantaged people in the community.

told Dahl he had not eaten for days, so Dahl said he would fix him a sandwich if Ragin would calm down. When they finished eating, Ragin became agitated again. Ragin told Dahl that he could build bombs, had access to guns and ties to organized crime, and that he could level the City Church and "waste" the pastors. Dahl and two friends eventually persuaded Ragin to let them take him to Overlake Hospital. There, Ragin seemed to control his behavior and was allowed to return home within a few hours. Dahl had no contact with Ragin until a few weeks later.

On September 18, 1996, Ragin called Dahl from the King County Jail to ask for help in posting bail. When Dahl refused, Ragin threatened him, stating, "You son of a bitch, I'm going to murder you and I'm going to take care of your family." Ragin also threatened to "take care of" a mutual friend of theirs. Dahl was "absolutely petrified" by this threat and believed Ragin was capable of carrying it out. On September 20, Ragin was charged with felony harassment under RCW 9A.46.020. During the hearing prior to the February 1997 jury trial, the State asked that evidence of all the prior bad acts Ragin had told Dahl about be admitted to prove the reasonableness of Dahl's fear—an element of felony harassment. Ragin objected, arguing that it was not probative for any purpose other than to demonstrate his bad character. The court granted the motion and gave a limiting instruction which told the jury it could consider the evidence only for the purpose of determining if Dahl's fear was reasonable.[2] The jury found Ragin guilty, and the court imposed a standard range sentence. Ragin appeals, contending that the prior bad acts were improperly admitted.

## DISCUSSION

Evidence of other crimes, wrongs, or acts is not

---

[2]Instruction 6 read:

Evidence has been introduced in this case on the subject of the defendant's past acts, statements, or threats for the limited issue of whether the victim was placed in reasonable fear that the threat would be carried out. You must not consider the evidence for any other purpose.

admissible to prove the character of a person in order to show that he acted in conformity with that character,[3] but the evidence may be admissible for other purposes.[4] Before admitting ER 404(b) evidence, the trial court must determine that the evidence meets two distinct criteria: 1) it is logically relevant to a material issue before the jury, and 2) the probative value of the evidence outweighs its prejudicial effect.[5] We will not reverse a trial court's decision to admit evidence of a defendant's prior acts absent an abuse of discretion.[6]

■ ■ A defendant is guilty of felony harassment if he threatens to cause bodily injury to a person, and the person is placed in "reasonable fear that the threat will be carried out."[7] The fact finder applies an objective standard to determine whether the victim's fear that the threat will be carried out is reasonable. This requires the jury to "consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal sanctions."[8] The State had to prove that it was reasonable for Dahl to believe Ragin would kill him and his family. At trial, Dahl testified that although he had not witnessed Ragin's violent temper before September 1996, he nevertheless had reason to believe Ragin would carry out the extreme threats he made on September 18. If the jury were presented with evidence of Ragin's September ravings alone, it may have believed Dahl was overreacting to Ragin's threats. Thus, Dahl's knowledge of Ragin's prior

---

[3] ER 404(b).

[4] ER 404(b); *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982).

[5] *State v. Binkin*, 79 Wn. App. 284, 289, 902 P.2d 673 (1995), *review denied*, 128 Wn.2d 1015 (1996) (citing *State v. Barker*, 75 Wn. App. 236, 242, 881 P.2d 1051 (1994)).

[6] *Binkin*, 79 Wn. App. at 289 (citing *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

[7] RCW 9A.46.020(1)(b).

[8] *State v. Alvarez*, 74 Wn. App. 250, 261, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995).

violent acts was relevant to the reasonable fear element of felony harassment.

But even though this evidence is probative of Dahl's reasonable fear, if the prejudicial effect substantially outweighed the probative value of the evidence, it still could not be admitted. Ragin asserts this is such a case. He claims that all the evidence admitted was not necessary to show the jury that Dahl's fear was reasonable because his behavior in September should have been sufficient to prove that he was capable of carrying out his threats.[9] He further asserts that the evidence simply proved that he was a "bad or violent person who needed to be locked up." We disagree.

Because evidence of Ragin's behavior in September alone did not provide a context for Dahl's fear, it is likely that these two incidents alone would not have been enough to convince the jury that Dahl reasonably believed Ragin would kill him. The jury was entitled to know what Dahl knew at the time Ragin threatened him to decide whether a reasonable person knowing what Dahl knew would believe Ragin could carry out the threats. The State was therefore allowed to use the frightening stories Ragin revealed to Dahl to prove its case. Although the prior bad acts evidence admitted in felony harassment cases generally involves the victim, the same rationale applies here. In both instances, the earlier acts are necessary to put the threats in context.[10] Although the stories may have put Ragin in a bad light before the jury, the evidence was necessary to prove an essential element of the charged crime, so its probative value outweighed its prejudicial effect.[11] Even if everything Ragin told Dahl about his past was not necessary to prove Dahl's state of mind, the trial court did not abuse its discretion by admitting this evidence.

■ Contrary to Ragin's assertion that the "trial court

[9]Somewhat inconsistently, Ragin claims later in his brief that the State should have been permitted to show only that the September 18 phone call occurred.

[10]See Binkin, 79 Wn. App. at 289.

[11]Id. at 292.

failed even to consider ER 404(b)" in admitting the evidence, the record shows that the court considered both his and the State's arguments and concluded the evidence was admissible for the narrow purpose of showing that Dahl was reasonably afraid.[12] Because we assume that the jurors followed the court's limiting instruction that it consider the evidence only for the purpose of determining the reasonableness of Dahl's fear,[13] the trial court's ruling admitting the evidence was not error.

Affirmed.

---

[12]The court's balancing of the prejudicial nature of ER 404(b) evidence must take place on the record. In this case, the State's 404(b) argument was thorough, and we assume that the court adopted its analysis. We note, however, that a more explicit analysis from the court would have been preferable.

[13]*State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994).