IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35439-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEREMY DOUGLAS PAWLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Jeremy Pawley appeals his conviction for felony harassment of a criminal justice participant. We affirm.

FACTS

Mr. Pawley's criminal charges arose from an incident at the Geiger Corrections Center (Geiger) in Spokane, where he was detained as an inmate. Corrections Officer Kevin White was conducting an inspection when Mr. Pawley became verbally disruptive. After Mr. Pawley admitted making disruptive comments, Officer White ordered that Mr. Pawley turn around to be handcuffed. Mr. Pawley complied.

Officer White walked Mr. Pawley to the stairwell. As Officer White opened the stairwell door, Mr. Pawley kicked it "hard enough to slam the door fully open against the stairwell wall, and back into [Officer White] and Mr. Pawley." 1 Report of Proceedings (RP) (May 31, 2017) at 116. In response, Officer White pushed Mr. Pawley up against the wall to control him, called for backup, and ordered Mr. Pawley to comply with his directives. Mr. Pawley pushed his body back against Officer White. Officer White, noting he was near the stairs' edge, forced Mr. Pawley to the ground and got on top of him.

Officer White and Mr. Pawley engaged in a struggle. Other guards arrived and aided Officer White. As the struggle progressed, Mr. Pawley became increasingly aggressive. Mr. Pawley remained in handcuffs, face down on the floor, and under the physical control of the guards throughout the altercation. Several guards testified that they either personally inflicted or saw others inflict pain on Mr. Pawley to force him to comply. Mr. Pawley was swearing and yelling throughout the struggle. He made several threatening statements to the guards generally. However, his most serious threats were directed at Officer White. Mr. Pawley threatened to kill Officer White several times. Officer White also sustained several cuts on his forearm during the struggle with Mr. Pawley, though the record does not reveal who caused them.

After the struggle, Officer White told the investigating sheriff's deputy that he was "extremely concerned" about Mr. Pawley's threats, "given the type of threats that were made and how those threats were made . . . . [H]e perceived that they were legitimate threats, and so he was concerned about his well-being as well as that of his family for future events that might occur." 2 RP (June 1, 2017) at 356-57 (testimony of sheriff's deputy). Mr. Pawley was charged by information with one count of custodial assault and one count of felony harassment.

At trial, Officer White testified about the struggle and the threats Mr. Pawley made against him. He stated that he had only been threatened twice previously in 10 years of work as a corrections officer. He also testified that he took the threats seriously because of their nature, the turnover rate at Geiger, and the fact that the threats continued after he had removed himself from Mr. Pawley's presence.

Several guards involved in the incident testified that the threats made them concerned for Officer White's safety.[1] Two guards testified that Mr. Pawley was more

---

[1] Officer Joseph Cobb testified that he took the threats Mr. Pawley made toward Officer White seriously because of "[t]he manner in what [sic] he was saying it. He said it." 1 RP (May 31, 2017) at 173. Officer Ian Scholz testified that he personally "would be concerned if somebody was making those threats against my life or saying that he'd beat me to a bloody pulp, that would raise quite a bit of concern for me." *Id.* at 191. Officer Anthony Dunnavant testified that he was not concerned for his own safety, but was concerned for Officer White's safety.

3

aggressive than any other inmate they had observed.

Mr. Pawley testified at trial. He denied threatening to kill Officer White. He also explained that his demeanor and actions were a result of the pain compliance techniques the guards used.

The jury acquitted Mr. Pawley of the custodial assault charge, but convicted him of felony harassment. The court sentenced Mr. Pawley to 55.5 months of confinement. Mr. Pawley appeals.

## ANALYSIS

*Sufficiency of the evidence*

Due process mandates that the State prove each element of the crime charged beyond a reasonable doubt. *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). "Sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime [are met] *beyond a reasonable doubt*.'" *State v. Boyle*, 183 Wn. App. 1, 6, 335 P.3d 954 (2014) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992).  When reviewing the evidence, the court makes all reasonable inferences in favor of the State and against the defense.  *Id*.

   *"Reasonable fear" requirement*

   To secure a conviction for felony harassment of a criminal justice participant, the State must prove, inter alia, that Mr. Pawley's words or conduct placed Officer White in "reasonable fear" that Mr. Pawley's threat would be carried out.  RCW 9A.46.020(1)(b); *State v. C.G.*, 150 Wn.2d 604, 607-08, 80 P.3d 594 (2003).  The reasonable fear standard requires showing both that the victim experienced actual fear and that the fear experienced was reasonable.  *State v. Trey M.*, 186 Wn.2d 884, 905-06, 383 P.3d 474 (2016).  Mr. Pawley contends the evidence supports neither the inference that Officer White was in fear, nor the inference that the officer's fear was reasonable.  Both contentions fail.

   The evidence readily supports the jury's determination that Mr. Pawley's threats to kill Officer White placed the officer in fear that the threats would be carried out.  Officer White testified that he took Mr. Pawley's threat to kill seriously.  This alone is sufficient to meet the fear requirement.  *State v. Hecht*, 179 Wn. App. 497, 501-02, 511, 319 P.3d 836 (2014).  Mr. Pawley's argument relies on a strict interpretation of the word "fear." However, courts have affirmed harassment convictions in cases where the victim took an

explicit threat to kill seriously. *See id.*; *Trey M.*, 186 Wn.2d at 905; *Boyle*, 183 Wn. App. at 8-9. Moreover, the investigating deputy's testimony further elaborates on Officer White's belief that the threats were "legitimate" and that Officer White was "extremely concerned" about them. 2 RP (June 1, 2017) at 356-57.

Second, the State must show that the victim's fear was reasonable. *Trey M.*, 186 Wn.2d at 905-06. The reasonableness of a victim's fear is determined by applying an objective standard to the threat and the context surrounding it. *State v. Ragin*, 94 Wn. App. 407, 411, 972 P.2d 519 (1999). Context can include previous interactions between the defendant and the victim, *id*. at 412, the defendant's conduct when delivering the threat, *see Hecht*, 179 Wn. App. at 501, 511, and the tone or nature of the threat. *Boyle*, 183 Wn. App. at 9; *see also State v. Binkin*, 79 Wn. App. 284, 292-93, 902 P.2d 673 (1995) (discussing increasingly aggressive tone and nature of defendant's threats), *abrogated on other grounds by State v. Kilgore*, 147 Wn.2d 288, 53 P.3d 974 (2002). When the threat is against a criminal justice participant, reasonableness is evaluated based on how a reasonable person in that position would have reacted. *Boyle*, 183 Wn. App. at 7.

The evidence supports the jury's finding that Officer White's fear was reasonable. Under Mr. Pawley's interpretation of reasonableness, Officer White's fear could only be

reasonable if there was evidence suggesting the threat could be carried out either at the time it was communicated or while Mr. Pawley was detained at Geiger. No such restriction applies. Rather, the question is whether Officer White reasonably feared that Mr. Pawley would kill him immediately or in the future. RCW 9A.46.020(1); *Boyle*, 183 Wn. App. at 7 ("'Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.'") (quoting RCW 9A.46.020(2)(b)). While Mr. Pawley's physical restraints during the altercation made it improbable he could have killed Officer White when he communicated the threat, those restraints did not prohibit a future attack. Officer White did not know when Mr. Pawley would be released from custody. Many of Mr. Pawley's threats referenced his intent to kill Officer White once he was released. *See, e.g.*, 1 RP (May 31, 2017) at 119 ("When I get out of this facility, I'll kill you [White]."); *id.* at 190 ("He was saying if he [Pawley] ever saw White on the street, he'd kill him."). The jury heard testimony that it was possible for inmates to discover which cars the corrections officers drove and their general work schedules. This context, combined with Mr. Pawley's aggressive behavior and viewed in the light most favorable to the State, provides sufficient evidence that Officer White's fear was reasonable.

No. 35439-3-III
*State v. Pawley*

CONCLUSION

Because the State presented sufficient evidence to support Mr. Pawley's

conviction for felony harassment of a criminal justice participant, the judgment of

conviction is affirmed. Based on Mr. Pawley's showing of continued indigence and the

State's lack of objection, Mr. Pawley's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, A.C.J.

WE CONCUR:

_____       _____
Siddoway, J.                    Fearing, J.